## FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**ROSANNE JUDITH GRISSMER**
Indianapolis, Indiana



**FILED**

Jun 13 2013, 6:21 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE NAME CHANGE OF: | ) | |
| JANE DOE, Petitioner, MARY DOE, | ) | |
| a minor, and BABY DOE, a minor, | ) | |
| | ) | No. 49A02-1211-MI-894 |
| Appellants-Petitioners. | ) | |

APPEAL FROM THE MARION CIRCUIT COURT
The Honorable Louis Rosenberg, Judge
Cause No. 49C01-1205-MI-21813

**June 13, 2013**

**OPINION – FOR PUBLICATION**

**BAKER, Judge**

Here, we are presented with a tragic set of circumstances. A mother of two young children (Mother) fled Missouri to escape horrible physical and sexual abuse from the father of her youngest child. Mother traveled to Indiana where she secured an order of protection. Unfortunately, Father was persistent in his pursuit of Mother, and he violated the order of protection. Father was placed on probation for violating the protective order, and his conditions included GPS monitoring.

Mother and her children lived in a domestic violence shelter, but Father found her, and the domestic violence shelter obtained an order of protection to keep Father away from the premises. Father still managed to abduct Mother twice; however, she escaped both times. At this point, the Department of Child Services (DCS) intervened and determined that the children would be placed with Mother permanently. Father's whereabouts are currently unknown.

Mother filed a petition to have her name and the names of her children anonymously changed because she is terrified that Father will find them. Indiana Code section 34-28-2-3 requires that all petitions for a name change be published in a nearby newspaper, which Mother does not want so that she can maintain anonymity and safety. During a hearing on the petition, the trial court suggested utilizing Indiana Administrative Rule 9 to admit important evidence into the record while still protecting the identities of Mother and her children. Nevertheless, Rule 9 was not used, and the petition was denied.

We conclude that given these facts and the current state of the law, Mother's best option would have been to utilize Rule 9, specifically Rules 9(G) and (H) to try to admit

essential evidence into the record and perhaps effectuate the name changes anonymously. Although we sympathize with Mother's difficult situation, because Mother did not employ this strategy, and we do not know what its outcome would have been, we affirm the decision of the trial court.

## FACTS

Because of the desire to maintain anonymity, the record is fairly sparse; however, Mother appears to be the victim of serious domestic abuse. Indeed, according to Mother, she was subjected to physical and sexual abuse so extreme that she had to be hospitalized. Although Mother met Father in Missouri, she relocated with her two children, Mary Doe and Baby Doe, to Indiana and obtained an ex parte order of protection. Father was the legal father of Baby Doe "by way of Paternity." Appellant's Br. p. 2.

Father violated the protective order and was convicted of class D felony intimidation and class A misdemeanor domestic battery and sentenced to 450 days of probation, including GPS monitoring. A no-contact order was issued against Father as a condition of his probation.

Mother and her children resided in a domestic violence shelter. Father attempted to contact Mother on several occasions and tried to visit the domestic violence shelter where Mother resided. Consequently, the domestic violence shelter obtained a no-contact order against Father to prevent him from approaching the premises.

Mother obtained housing through the shelter's Permanent Supportive Housing Program. Notwithstanding these measures, Father found and abducted Mother from her

3

new residence. Mother eventually managed to escape with the assistance from law enforcement, but by the time Mother was found, her lease was in process of eviction due to abandonment.

Mother and presumably the children sought refuge in another domestic violence protection shelter and relocated to another residence for a brief period of time until Father removed his GPS anklet while still on probation. Father found Mother again, but fortunately, she was able to escape. Father's whereabouts are currently unknown.

Because of the extensive amount of abuse that Mother suffered and the children's exposure to it, the DCS intervened. The DCS determined that Mary and Baby Doe would be placed with Mother permanently and requested termination of Father's parental rights.

Mother has sought numerous remedies, including requesting a new social security number and placement on the Attorney General's Address Confidentiality Program. Nevertheless, Father managed to locate her. Although it is not clear from the record, Father somehow has access to various methods of locating individuals, including methods used by credit reporting agencies to locate debtors.

Mother is terrified that Father will locate her and cause grave harm to her and her children again. To this end, on May 30, 2012, Mother and her children (collectively, "the Appellants") filed a joint petition for anonymous name change, requesting to anonymously change their names, or in the alternative, to change their names by way of a sealed record and to waive the statutory requirement of publication under Indiana Code section 34-28-2-3.

4

A hearing on the name change petition was held on September 5, 2012, whereby the Appellants submitted their memorandum of law. The trial court denied the petition.

The trial court held a status hearing on September 19, 2012, to determine how the Appellants wanted to preserve the record on appeal. The Appellants' counsel maintained that Father was acquiring information regarding Mother through family and contacts at Wells Fargo and perhaps other agencies. At that point the following colloquy occurred between the Appellants' counsel and the trial court:

> THE COURT: And how would that change if her name was changed?
>
> MS. GRISSMER: If her name were changed, he would not be able to track her at all through any credit bureau reporting agencies. She would be able to obtain a new Social Security number and essentially a new identity, so it would totally . . .
>
> THE COURT: But he can still track --- or try to track her through her family, right?
>
> MS. GRISSMER: He can try. But she would be able to relocate much easier and obtain a new address and a completely new identity.
>
> ***
>
> MS. GRISSMER: . . . I do know that under the CHINS proceedings, his rights were terminated. I think there were some issues regarding service of process on the father[1]. . . . I would respectfully like to refrain from entering the documentation into the record, if that may serve as clarification for the Court.
>
> THE COURT: Well I don't --- if you're not going to admit them as exhibits, I don't know how I can base any decision that I have on them.

---

[1] To prevent such service of process problems in the future, we might suggest that a rule be promulgated directing that service of process be served upon the Indiana Attorney General in cases such as the instant one. Such a rule would ensure that the public's interest is protected.

MS. GRISSMER: Alright.

THE COURT: There are obviously provisions under Administrative Rule 9, to admit them in the proper manner, but absent that I can't consider them, so . . . Do you have anything else you want to present ma'am?

MS. GRISSMER: If I may present the documentation under Administrative Rule 9G and have those records sealed, I --- I would be willing to do that, if I may Your Honor.

Tr. p. 6-8.

The trial court then explained that Administrative Rule 9G required a hearing on whether the hearing at which the documentation would be introduced could be closed and the records sealed. Counsel again stated that she declined to submit documentation at that time, and the trial court responded that "you can look at Rule 9 and decide whether or not it would fit your circumstances or whether you wanted to proceed under that but, given what is before me now, I'm certainly going to have to deny your petition for name change." Id. at 8. This appeal ensues.

DISCUSSION AND DECISION

The Appellants argue that the trial court abused its discretion by refusing to grant their petition to change their names because they failed to give notice of their name change by publication. More particularly, the Appellants contend that the publication requirement should be waived when the preponderance of the evidence indicates the presence of domestic violence, and the purpose of the name change is protection from the perpetrator.

6

Indiana Code chapter 34-28-2 establishes the procedure for a civil name change. Section 3 provides that notice of the petition for change of name must be given by three weekly publications in a newspaper in the county where the petition is filed, and if no newspaper is published in that county, then notice must be given in a newspaper that is published closest to that county.   The purpose of the publication requirement is to ensure that the decision is not motivated by a fraud.  See Matter of J.N.H., 659 N.E.2d 644, 646 (Ind. Ct. App. 1995) (recognizing that a person may generally change his or her name in the absence of a fraudulent purpose).

To the majority of individuals wanting to change their name, the publication requirement is probably, at most, a minor inconvenience.  However, to the Appellants and others similarly situated, it is a mischievous impediment in their pursuit to stay out of harm's way.

At the September 19th hearing, the trial court suggested that the Appellants investigate the use of Administrative Rule 9 to admit the necessary documentation to support their position while prohibiting the general public from having access to the documentation.   The general rule in Indiana is that information submitted to state government entities, including the courts, is accessible by the public.  Travelers Cas. & Sur. Co. v. U.S. Filter Corp., 895 N.E.2d 114, 115 (Ind. 2008).   Nevertheless, our Supreme Court "has adopted rules on public access to court records, 'taking into account public policy interests that are not always fully compatible with unrestricted access.'"  Id. (quoting Administrative Rule 9(A) (Commentary)).

Rule 9(G) specifies the exceptions to the general policy of public access. Some of these exceptions include records of juvenile proceedings, "[i]nformation relating to protection from abuse orders, no-contact orders and workplace violence restraining orders," addresses, phone numbers, and dates of birth which explicitly identifies persons who are witnesses or victims in criminal, domestic violence, stalking, sexual assault, juvenile, or civil protection order proceedings, and information excluded "by specific court order." The procedure for excluding information under the last category is in Rule 9(H). Travelers, 895 N.E.2d at 116.

To obtain a specific court order pursuant to Rule 9(H), there are several procedures that litigants must follow. Allianz Ins. Co. v. Guidant Corp., 884 N.E.2d 405, 408 (Ind. Ct. App. 2008). More particularly, the party seeking to prohibit public access has the burden of providing notice to the parties and any other person that the court may direct. Id. Further, if the party declines to give notice, he or she must demonstrate the reasons for prohibiting access to the information. Id. And, relevant to the circumstances in the instant case, the request to prohibit public access to information in a court record must demonstrate that "[a]ccess or dissemination of the information will create a significant risk of substantial harm to the requestor, other persons or the general public." Admin. R. 9(H)(b).

Here, as stated above, the trial court suggested that the Appellants introduce their evidence through Rule 9. Although the trial court would have needed to conduct a hearing to determine what could be shielded from public access pursuant to Rule 9, it is

8

fairly clear that the documentation regarding any DCS involvement and Father's legal rights to Baby Doe would be excluded from public view. Admin. R. 9(G)(vi). Likewise, Mother could introduce evidence of protective orders against Father, and that evidence would be shielded from public access. Admin. R. 9(G)(xiii).

Because the Appellants did not utilize the procedures outlined in Rule 9, the outcome of such proceedings is conjecture. Nevertheless, it is fairly likely that some, if not much of their evidence concerning the protective orders, domestic violence, and DCS proceedings, would have been protected from public access under Rule 9. And while Mother's desire to change her and her children's name would have indeed proved more difficult in the absence of publication, Rule 9(H) may have provided the relief and protection that Mother so desperately seeks. To be sure, the Commentary to Rule 9(A) speaks volumes: "there are times when access to information may lead to, or increase the risk of, harm to individuals." However, that said, in light of the record with which we are presented and the current state of the law, we are compelled to uphold the trial court's denial of the Appellants' petition for name change.

The judgment of the trial court is affirmed.

MAY, J., and MATHIAS, J., concur.

9